**STATE of Maine**

v.

**Paul THOMPSON.**

Supreme Judicial Court of Maine.
Argued Nov. 20, 1985.
Decided Jan. 9, 1986.

John R. Atwood, Dist. Atty., David M. Spencer (orally), Asst. Dist. Atty., Wiscasset, for plaintiff.

Steven C. Fletcher (orally), Rockland, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN and SCOLNIK, JJ.

SCOLNIK, Justice.

Paul Thompson appeals from a judgment entered on a jury verdict in the Superior Court (Lincoln County) convicting him of Criminal Threatening with the use of a dangerous weapon, 17-A M.R.S.A. § 209 (1983).[1] On appeal, we find no merit in any of defendant's numerous claims of reversible error at trial, and accordingly, we affirm his conviction.

At about 7:00 p.m. on July 28, 1983, Jerry Curtis arrived at the Hildebrandt Farm, located on Duck Puddle Road in Nobleboro, to obtain his clam digging gear. The farm consisted of several buildings, including a large barn that stood at the end of the driveway which led in from the road. The driveway ran between two homes. Robert Day, his wife and three children and another couple resided in one house. The defendant, his girlfriend and her two children lived in the other. After Curtis's arrival, Day and Curtis walked toward the barn where Curtis's gear was located. As they walked, Curtis noticed the defendant standing at the entrance of an enclosed porch attached to the defendant's resi-

---

1. Title 17-A M.R.S.A. § 209(1) provides: "A person is guilty of criminal threatening if he intentionally or knowingly places another person in fear of imminent bodily injury."

Criminal threatening is a Class D crime, which, when committed with the use of a dangerous weapon, is enhanced to a Class C offense. *See* 17-A M.R.S.A. §§ 209(2), 1252(4) (1983).

dence. Day, who also noticed the defendant at the porch entrance, observed that he had a shotgun at his side. As they continued walking to the barn, Curtis turned and saw the defendant holding what appeared to be a shotgun. He testified that it "looked like it was pointed—if a shot was fired—that it could hit me." Curtis turned and told Day: "Robert, he's got a gun." Day replied: "Just keep walking." Curtis slowed his pace, became fearful and thought seriously about leaving.

When Day was approximately one foot from the barn, he heard a shot "from a shotgun." From the sound of the shot, Day thought it came "[t]o the side of [him] [t]o the rear." Immediately after the shot, old paint and "stuff" fell from the barn onto Day's head. He felt that his life was in danger. Day turned and saw the defendant pump the cylinder back on the shotgun. He shouted to the defendant that he was going to call the police. Day then headed back to his house and saw the defendant go back onto the porch. When Curtis heard the shot from the direction where the defendant had been standing, he thought that the defendant had shot at him. He immediately turned and ran. As he was leaving, Curtis saw the defendant swing the gun down. Neither Day nor Curtis heard the defendant say anything. The distance from the defendant's position at the porch to the front of the barn was eighty-seven feet.

Two other individuals observed the shooting. Connie Lewonn saw the defendant standing on his porch, with the gun in one hand and the butt end on the floor. She heard him yell: "Don't go toward the barn. I'm watching you." As the defendant hollered, Lewonn saw him raise the gun and heard him say he was going to shoot if they went toward the barn. She stated that when the shot was fired, the gun was pointed toward Day and Curtis or in the direction they were headed. Alex Reynolds, Day's stepson, who was fourteen years of age, saw Day and Curtis walking toward the barn and the defendant standing outside his porch with a shotgun in his hands. Reynolds saw the defendant aim the shotgun toward Day and Curtis and, just before firing the gun, "aim up in the air over their head."

Fifteen to thirty minutes after the shooting, Detective Sergeant Richard Breault of the Lincoln County Sheriff's Department arrived at the farm. Day came out of his residence and spoke with Breault. Shortly thereafter, the defendant, while standing at the front door of his house, shouted something in Breault's direction. Breault yelled back, identifying himself as a police officer and stating that he wished to talk. The defendant did not respond but walked back into his home. A few minutes later, the defendant came back out of his home, holding onto the shoulders of two small boys, and placing them in front of him. The defendant hollered at Breault: "Why don't you use your fucking heads for something other than hanging your hat on?" As the defendant went back into his house, Breault shouted: "This is the police, Paul. I want you to come out. I want to talk with you." About two minutes later, as six additional police officers arrived and surrounded the house, Breault noticed the drawing of the curtains and shades in the defendant's residence. When a police officer used a public address system to ask the defendant to come out and talk, the defendant opened a window and yelled: "Get the fuck out of here. This is a family affair." Following this event, the police did not see any movement in the defendant's residence nor did they see the defendant leave the residence. At no time during the evening did they tell the defendant that he was under arrest.

On the following day, a search of the defendant's residence revealed a loaded twelve gauge pump shotgun and a casing from a twelve gauge shotgun slug. Several witnesses stated that the shotgun looked like, or was similar to, the one that the defendant fired in the direction of Day and Curtis. A forensic ballistics examiner determined that the casing of the twelve

gauge shotgun slug had been fired by the seized shotgun. When Breault returned to the farm two days later, he discovered a recently made hole near the apex of the barn, about twenty-five feet above the ground, that was consistent with the size of a twelve gauge shotgun slug. The angle of the hole suggested that the slug had been fired from a point in front of the defendant's residence. Breault, with the aid of a geometry teacher, calculated that in order to make the hole in the barn from the location where the defendant fired, the gun would have had to have been at a sixteen degree angle above the horizontal.

## I.

The defendant contends the trial justice erred in admitting into evidence Richard Breault's testimony regarding the events at the farm following his arrival. On the morning of his trial, the defendant made an oral Motion in Limine to exclude the evidence of his actions following the shooting incident, asserting that it was irrelevant, and that whatever probative value it might have was outweighed by its prejudicial nature. *See* M.R.Evid. 401, 403. The presiding justice denied the motion finding the evidence "relevant and proper testimony." At trial, the defendant reiterated his objection but was overruled. The justice found the evidence to be a continuing part of the incident.

▮ The admissibility of evidence is committed to the sound discretion of the trial justice. "[T]he determination of relevance and the determination [whether] the probative value of the evidence is outweighed by its danger of unfair prejudice are reviewed on appeal only for abuse of that discretion." *State v. Conlogue*, 474 A.2d 167, 170 (Me.1984) (footnotes omitted). Evidence of what transpired before or after the incident in issue is admissible if it tends to establish intent or other relevant state of mind. *State v. Maxwell*, 328 A.2d 801, 807 (Me.1974); *see also State v. Brown*, 321 A.2d 478, 482 (Me.1974). Because the State was required to prove that by his use of the firearm, the defendant "intentionally or knowingly" placed Day or Curtis in fear of imminent bodily injury, and because, evidence of flight, concealment, or analogous conduct is probative to establish a consciousness of guilt, *see State v. Maxwell*, 328 A.2d at 807; *State v. Gordon*, 321 A.2d 352, 367 (Me.1974), we conclude that Breault's testimony of subsequent events was relevant evidence. It can reasonably be inferred that the defendant saw Day talking with Breault upon his arrival at the farm. His subsequent conduct, including his failure to make himself available to the police and his antagonism toward police interference as manifested by his responses to Breault's inquiries, was relevant to demonstrate the defendant's awareness of his prior intentional wrongful conduct. Whatever prejudicial impact the evidence might have had on the jury was clearly outweighed by the significant probative value of this evidence as to the defendant's state of mind. *See, e.g., State v. Gordon*, 321 A.2d at 367. The admission of Breault's testimony was well within the discretion of the presiding justice.

▮ The defendant also asserts that the trial justice erred in failing to assess the relative weight of the Rule 403 factors. *See State v. Poland*, 426 A.2d 896, 900 (Me.1981). *Poland* teaches that in making such an assessment the trial justice should generally explain his reasons for *excluding* relevant evidence to afford counsel an opportunity to eliminate the basis for the objection. *Id.* However, when a justice *admits* evidence, as in the instant case, a failure to articulate his basis for concluding that the probative value of the evidence is not substantially outweighed by its prejudicial effect is not inappropriate since it is unnecessary to provide counsel the opportunity to diminish the prejudice that has already been determined to be of insufficient countervailing weight. Thus, *Poland* has no application to this case. We find no abuse of discretion in the application of Rule 403.

## II.

■ The defendant argues that the trial justice erred by refusing to strike that part of the indictment alleging that Robert Day was one of two persons placed in fear of imminent bodily injury, because there was insufficient evidence that Day actually experienced such fear. The motion to strike, made at the close of the State's case, is equivalent to one for judgment of acquittal as to the charge of Criminally Threatening Day with the use of a dangerous weapon.[2]

[5] When reviewing a denial of a motion for judgment of acquittal, we must determine whether, in view of all the evidence in the case, there was legally sufficient evidence to support a guilty verdict. *State v. Duquette*, 475 A.2d 1145, 1147 (Me.1984). The test of such legal sufficiency is whether, based on the evidence viewed in the light most favorable to the State, any trier of fact rationally could ahve found beyond a reasonable doubt every element of the offense charged. *State v. Barry*, 495 A.2d 825, 826 (Me.1985). The evidence in this case was sufficient to eliminate any reasonable doubt that the defendant intentionally or knowingly placed Day in fear of imminent bodily injury with the use of a firearm.

As he walked toward the barn, Day saw the defendant with the shotgun and Curtis told him that the defendant had a gun. Day heard the gun discharge and immediately thereafter, a shot hit the barn wall above Day's head. He thought that it was a warning shot and that his life was endangered. That Day did not manifest his fear by running from the scene does not establish that he was not placed in fear. Day was both subjectively and objectively justified in being imminently fearful of bodily injury when the defendant fired the shot. *Cf. State v. Lindsey*, 447 A.2d 794, 796 & n. 2 (Me.1982). We find no error in the justice's denial of the motion to strike.

2. Had the presiding justice agreed with the defendant, he also had the procedural option of withdrawing this allegation from the jury's con-

## III.

The defendant argues that the trial justice's instruction to the jury produced a fatal variance between the allegations in the indictment and the proof adduced at trial. The indictment charged that the defendant

did intentionally or knowingly place Robert Day or Jerry Curtis in fear of imminent bodily injury with the use of a dangerous weapon, namely a firearm, by then and there pointing said firearm at the person(s) of said Robert Day or Jerry Curtis.

The defendant requested an instruction that the State was required to prove beyond a reasonable doubt that the defendant pointed a firearm at Day or Curtis. The trial justice declined to give such a restrictive instruction. He did instruct the jury, at the defendant's request, that it could

consider all of the evidence in this case including the question of whether or not the weapon was or was not pointed as disclosed by the evidence. You may consider that on the issue of intent; that is, you can consider that on the defendant's intent. And you can also consider that on the issue of whether or not the alleged victims were, in fact, placed in fear of imminent bodily injury.

The defendant argues that the pointing of the shotgun "at" a person, as opposed to "in the direction of," is central to the crime of Criminal Threatening. Thus, he asserts he was surprised and his defense was prejudicially impaired by the court's refusal to give his requested instruction. This argument is without merit.

■ The defendant's position combines two dissimilar principles. First, it erroneously supposes that an essential element of the crime of Criminal Threatening, when committed with the use of a dangerous weapon, is that the weapon be pointed "at" an alleged victim. The gravamen of this

sideration after the close of all the evidence. M.R.Crim.P. Rule 29(a). *See State v. Van Sickle*, 434 A.2d 31, 34 (Me.1981).

offense, whether committed with or without a weapon, is the intentional placing of a person in fear of imminent bodily injury. In the event a dangerous weapon is used, the seriousness of the offense is enhanced from a Class D to a Class C crime. Accordingly, whether a gun is pointed "at" or "in the direction" of a person is evidence to be considered by a jury in determining if an alleged victim was indeed placed in fear of imminent bodily injury. *Cf. State v. Satow,* 392 A.2d 546, 549–50 (Me.1978). Thus, the presiding justice's denial of the requested jury instruction was not error.

█ The second aspect of the defendant's contention is a claimed variance between the allegation in the indictment and the evidence at trial. In essence, he contends that he was surprised by the evidence that the gun was pointed "in the direction" of the victims rather than "at" them. The evidence shows that the defendant fired the shotgun at an angle sixteen degrees above the horizontal when the victims stood approximately eighty-seven feet away from where the defendant stood and the shot struck the barn only twenty-five feet above the ground. Even assuming such evidence to be at variance from an allegation of pointing the gun "at" the victims, we discern no basis for the defendant to claim any surprise or impairment in the preparation of his defense. *Cf. State v. Bickford,* 497 A.2d 138, 140 (Me.1985).

### IV.

The defendant's remaining contention is that the evidence was insufficient to support the jury's guilty verdict. A conviction will be vacated only if, after viewing the evidence in the light most favorable to the State, any trier of fact rationally could not have found beyond a reasonable doubt every element of the offense charged. *State v. Barry,* 495 A.2d at 826. The record clearly reveals that the evidence was sufficient to support a finding that the defendant intentionally or knowingly placed Day and Curtis in imminent fear of

bodily injury with the use of a dangerous weapon.

The entry is:

Judgment affirmed.

All concurring.