## STATE of Maine

### v.

### Richard HAGAN.

Supreme Judicial Court of Maine.

Argued June 10, 1987.

Decided July 21, 1987.

William R. Anderson, Dist. Atty., Geoffrey Rushlau (orally), Asst. Dist. Atty., Bath, for plaintiff.

John T. Voorhees, Jr. (orally), Brunswick, for defendant.

Before McKUSICK, C.J., and NICHOLS, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

McKUSICK, Chief Justice.

After a jury-waived trial the Superior Court (Sagadahoc County) convicted defendant Richard Hagan of criminal threatening with a dangerous weapon, 17–A M.R.S.A. §§ 209, 1252 (1983). On appeal the sole question is whether the trial justice's finding of fact that Hagan placed the victims in subjective fear of imminent bodily injury was adequately supported by the whole record, despite the victims' own denial at trial that they had been "afraid" of Hagan. The record contains abundant evidence, including the victims' own specific

description of their reactions to Hagan's threatening actions, justifying the justice's factual conclusion. We therefore reject defendant's sufficiency-of-the-evidence challenge to his conviction of criminal threatening.

Early in April 1985, William Lenfest (aged 67) gave defendant Hagan (aged 27) and his girlfriend a notice to quit a wooded piece of land in North Bath on which the couple had lived in a teepee for some two years. Later that month Lenfest, accompanied by his neighbor Donald Freeman (aged 73), approached the teepee to check on the couple's progress in moving off the land. Hagan and his girlfriend met the two older men a short distance from the teepee. A heated dispute followed. In the course of the argument Hagan pointed a rifle at close range at Lenfest and Freeman and ordered them to get off "his land." At the time the rifle was cocked and Hagan had his finger on the trigger. As fast as they could disengage themselves, Lenfest and Freeman left the teepee area and proceeded directly to the Bath police station. Within a half hour Lenfest and Freeman came back with two Bath police officers. Lenfest and Freeman waited some distance away as the officers went to the teepee and took the gun away from Hagan. The officers discovered that Hagan's rifle was loaded and had no mechanical safety.

Under 17–A M.R.S.A. § 209, "[a] person is guilty of criminal threatening if he intentionally or knowingly places another person in fear of imminent bodily injury." Hagan argues on appeal that the State failed to prove the fear element of the offense of criminal threatening because Lenfest and Freeman each asserted at trial that he had not been "afraid." In spite of that isolated statement made by both, the trial justice from other evidence found as a fact that defendant Hagan had put the victims in actual, subjective fear of imminent bodily injury. The justice specifically found "that [Hagan] succeeded in placing them in fear of imminent bodily injury ... in the sense that they both perceived a very real danger [of] an accidental killing ... or serious injury taking place by having a weapon pointed right at their eyes three feet away, [a] cocked weapon."

A finding that a victim was put "in fear" by the defendant's acts need not rest upon the victim's characterizing himself as having been afraid. In *State v. Lindsey*, 447 A.2d 794, 796 (Me.1982), evidence that the defendant had behaved in a threatening manner toward victims on two (uncharged) prior occasions was admissible to show that the victims were placed in fear when the defendant threatened them a third time. *See also United States v. Kimball*, 555 F.Supp. 1366, 1371 (D.Me.1983) (conclusion that "officers had in fact feared imminent bodily injury" based on evidence that officers had reacted to shots fired toward them by moving their vessel out of range). Furthermore, the fact that a victim showed courage at the time the offense was committed does not preclude a factfinder from concluding that the victim was placed "in fear" by the defendant under section 209. In *State v. Thompson*, 503 A.2d 228 (Me.1986), the fact that the victim did not manifest his fear by running from the defendant's line of fire after the defendant had fired a shot above his head did not establish that he was not placed in fear. The evidence that the victim saw the defendant with a gun, heard the gun discharge and the bullet lodge in a barn wall above his head, and thought the shot was a warning shot and that his life was endangered was sufficient to support a guilty verdict. *Id.* at 232.

The evidence before the Superior Court justice showed that Lenfest and Freeman, although at trial they resolutely refused to admit to anything smacking of cowardice, experienced the normal, expectable reaction of fear to Hagan's pointing a presumably loaded rifle at them at close range. To the prosecutor's question "What did you feel? What did you think?", Lenfest responded: "When you're looking down the barrel of a gun I don't know if you do stop and think too much," and that he was "certainly" concerned. He later added: "You don't push anybody too hard when they have got a gun, when you're looking down the barrel of a

gun.... You could get yourself killed." Freeman describes the sequence of events as follows: "[Hagan] grabbed the gun and pointed it right at me, ... I was looking right at the barrel of it and it was cocked. And that's when I told Mr. Lenfest this fellow's got a tail in a trap. Let's go get the police. So, that's what we done." Freeman thought that Hagan might shoot him, either accidentally or deliberately. He testified;

> Nobody could tell whether [the gun] was loaded, but when you're looking down the barrel you don't question it.... One thing that went through my mind when he was pointing the gun at me and then he was swinging it to Mr. Lenfest, I thought in my mind quick, like that, that I could ... knock the gun out of his hand. And then I thought ... that his thumb could slip off the trigger and I could take it between the eyes.... [W]hen [Hagan] spoke he said "Get off my land or I'll shoot you." Now anybody can read that.

Freeman explained that he did not turn around to leave immediately because "[Hagan] was coming back and forth with [the gun]—to Bill and I and I was very disturbed." Finally, when asked by the court what he had thought about when Hagan pointed the gun at them, Lenfest responded: "[T]he last time I looked down a barrel like that was in World War II and I don't like looking down the barrel of a gun when it's cocked." The men also demonstrated their fear of Hagan upon returning to the scene by waiting some distance from the teepee, allowing the police officers without them to approach Hagan and disarm him.

On the whole record the trier of fact was fully justified in concluding beyond a reasonable doubt that even though Freeman and Lenfest were at trial reluctant to admit that they had been afraid of Hagan at the time he had confronted them with a cocked rifle, they had in fact been put in subjective fear of imminent physical injury within the meaning of section 209. *See State v. Barry,* 495 A.2d 825 (Me.1985).

The entry is:

Judgment affirmed.

All concurring.