2003 ME 142

**STATE of Maine**

v.

**James KOTREDES.**

Supreme Judicial Court of Maine.

Argued: Oct. 16, 2003.

Decided: Dec. 9, 2003.

**332**

R. Christopher Almy, District Attorney, C. Daniel Wood, Asst. Dist. Atty. (orally), Bangor, for State.

Arthur J. Greif, Esq. (orally), Gilbert & Greif, P.A., Bangor, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

CALKINS, J.

[¶ 1] James Kotredes appeals from the judgment and conviction of theft by unauthorized taking in violation of 17–A M.R.S.A. § 353(1) (1983)[1] (Class D) entered in the Superior Court (Penobscot County, *Hunter, J.*) following a jury trial, and he appeals the restitution portion of his sentence. The charge stemmed from Kotredes's use of a Key Bank credit card belonging to the Town of Millinocket while he was the town manager. We affirm the conviction, but we vacate the sentence. In doing so, we address only three of the several issues that Kotredes has raised on appeal. We conclude that (1) the evidence was sufficient to support Kotredes's conviction because the town did not authorize Kotredes to make personal charges or reimburse himself for business expenses by taking cash advances and charging items; (2) his conviction for Class D theft was not barred by the statute of limitations because the evidence would have been sufficient to support a conviction for Class B theft; and (3) the restitution order lacked

---

1. The current version is at 17–A M.R.S.A. § 353 (Supp.2003).

statutory authority because the cost of the special audit did not represent an "economic loss" for which restitution is authorized.[2]

## I. FACTS AND PROCEDURE

[¶ 2] Kotredes was the Millinocket Town Manager from January 1993 to July 1997. During his tenure as town manager, in May 1995, the town authorized the issuance of a Key Bank credit card to Kotredes and two other employees. Key Bank separately itemized the charges on the credit card bills to indicate which employee had charged a particular item. At trial, the State presented the Key Bank credit card bills to the town for billing dates from May 1995 to July 1997.

[¶ 3] The town hired Robert Adams to conduct a special audit in December 1998. Adams testified that Kotredes used the town credit card for $4118 in cash advances and charged $3327.56 in gasoline purchases. Kotredes charged over $1700 on the town credit card for women's and men's clothing, tires, sports equipment, and building supplies, and he charged hotel expenses for a vacation in Myrtle Beach, South Carolina. In all, the credit card statements showed that Kotredes charged in excess of $16,000 between May 1, 1995, and July 1, 1997, to the town credit card. He had not submitted vouchers or documentation for any of the items or cash advances listed on the credit card bills. Kotredes's contract with the town required him to submit vouchers for all items for which he was entitled to reimbursement.

[¶ 4] Payments for Kotredes's cash advances, gasoline charges, and other purchases were made by the town to Key Bank. The amounts owing for the credit card charges were listed on warrants and given to the town councilors to approve at council meetings. The warrants were the mechanism for the approval of all town expenditures, and they included numerous items in addition to the credit card bills. The credit card bills were available for the councilors to review when they signed the warrants. Through this method, the councilors approved payments to Key Bank for the credit card charges. Kotredes, however, paid approximately $1700 in two payments directly to Key Bank for charges that he admitted were personal: he made the first and largest payment in February 1996 for items charged in December 1995, and the second payment in his last month as the town manager.

[¶ 5] At trial, the State argued that the town did not authorize credit card transactions by Kotredes for cash advances, gasoline purchases, and other personal purchases and that, by making such charges, Kotredes exercised unauthorized control over property belonging to the town with the intent to deprive it of those sums. Kotredes's defense was that the cash advances and all purchases for which the town paid Key Bank were authorized by the town councilors: first, when they approved the opening of the account, and second, when they approved payment by signing the warrants. Because the town authorized payment of the charges, he argued, he could not have exercised unauthorized control over town property. Kotredes testified that the cash advances and other purchases were in lieu of reimbursement for town-related business expenses and in lieu of a mileage reimbursement for travel on town business.

---

**2.** Kotredes's remaining issues concerning his conviction are without merit, and we do not discuss them. Kotredes also argued that (1) the jury instructions were incorrect; (2) he was entitled to a mistrial or dismissal for prosecutorial misconduct; and (3) the court made erroneous evidentiary rulings.

[¶ 6] The indictment, returned on December 4, 2000, alleged that between May 1, 1995, and July 1, 1997, Kotredes committed Class B theft by unauthorized control over property of the Town of Millinocket, of a value in excess of $10,000, with the intent to deprive the town of that property. At the jury trial numerous witnesses testified including the special auditor, town councilors, town employees, and Kotredes. Over Kotredes's objection the court instructed the jury on lesser-included theft offenses, and the court gave the jury a verdict form for that purpose. The court told the jury that if it found Kotredes guilty of theft, it had to determine the value of the stolen property. The court rejected several proposed instructions from Kotredes, including a request that the jury be instructed that in the event it found Kotredes guilty of theft of less than $2000, it must determine whether another jury acting rationally could have found Kotredes guilty of theft of $2000 or more.[3] The jury found Kotredes guilty of the lesser-included offense of Class D theft, finding that the value of the property was in excess of $1000 but less than $2000.

[¶ 7] At the sentencing hearing, Millinocket's current town manager requested that the court order Kotredes to pay $2000 in restitution to cover a portion of the auditing and attorney expenses that the town had incurred as a result of Kotredes's theft. Millinocket paid $15,170 to Adams, the special auditor, and it paid an attorney over $8000. The court sentenced Kotredes to 364 days incarceration with all but ninety days suspended and probation for one year. The court ordered Kotredes to pay the town $15,170 in restitution and to perform 200 hours of community service.

## II.  AUTHORIZATION OF CREDIT CARD CHARGES

[¶ 8] Kotredes argues that he was entitled to a judgment of acquittal because the evidence disclosed that the town councilors authorized payments to Key Bank for the charges made by Kotredes on the credit card. Because the town councilors authorized the payments, contends Kotredes, he cannot be guilty of the unauthorized use of the town's property. He relies on the testimony of the former councilors that they had the opportunity to examine the warrants and the credit card bills, and that one of the councilors carefully examined the warrants.

[¶ 9] To convict Kotredes of theft, the State had to prove that he exercised unauthorized control over the property of the Town of Millinocket with the intent to deprive it of the property. 17–A M.R.S.A. § 353.[4] At the close of the State's case-in-chief and at the close of all of the evidence, Kotredes moved for a

---

3. Other jury instructions requested by Kotredes that he argues the court erroneously rejected are the following: (1) an instruction that the town councilors are presumed to perform their acts in accordance with the law; (2) an instruction that, in interpreting Kotredes's employment contract, any ambiguity could be construed in Kotredes's favor and that oral modifications can be made to a written contract; and (3) an instruction limiting the definition of property to cash.

4. Section 353 provides:

1. A person is guilty of theft if he obtains or exercises unauthorized control over the property of another with the intent to deprive him thereof.
2. As used in this section, "exercises unauthorized control" includes but is not necessarily limited to conduct heretofore defined or known as common law ... larceny by conversion ... and embezzlement.
17–A M.R.S.A. § 353 (1983) (current version at 17–A M.R.S.A. § 353 (Supp.2003) (effective Jan. 31, 2003)).

judgment of acquittal. M.R.Crim. P. 29(a). The court properly reserved its ruling until the jury reached its verdict. After the verdict, the court denied the motion. We review a denial of a motion for acquittal by using a sufficiency of the evidence analysis. We view the evidence in the light most favorable to the State to see if any factfinder could rationally find every element of the offense beyond a reasonable doubt. *State v. Thompson*, 503 A.2d 228, 232 (Me. 1986).

[¶ 10] Three former town council members testified at trial. Two testified that they had never authorized Kotredes to use the credit card for cash advances and the third said he had not known that Kotredes took cash advances. They testified that they had not authorized Kotredes to use the credit card for his personal expenses. From the audio tape of the 1995 council meeting concerning the credit card and from other testimony, the jury could have inferred that town employees were not authorized to use the credit card for charging personal items.

[¶ 11] Although Kotredes testified that he used the credit card to pay for business-related items and as a means of reimbursing himself for gasoline for town travel and for other town business, his contract with the town required him to submit vouchers to be reimbursed for authorized expenditures. The evidence was that after the first few months as town manager he never submitted vouchers. Kotredes admitted that he used the credit card for personal purchases as well as for reimbursing himself for expenditures that he made while conducting town business.

[¶ 12] The warrants used by the town for payment of its bills, including the credit card bills, were in evidence, and the jury was able to see the large volume of town bills appearing on each warrant. Authorization of payment to Key Bank was only one of many expenditures the town councilors considered each month. This evidence was sufficient to support a finding that although the councilors approved the *payment* of the credit card bills to Key Bank, they did not *authorize* Kotredes's individual cash advances and numerous other charges. There was sufficient evidence for the jury to find that Kotredes had used the town's credit card for personal cash advances and purchases, which had not been authorized, and that Kotredes intended to deprive the town of the value of the items he charged to the account. Because the State presented sufficient evidence on every element of the offense of theft, the court did not err in denying the motion for acquittal.

## III. STATUTE OF LIMITATIONS

[¶ 13] Kotredes contends that he was entitled to have the jury decide whether there was sufficient evidence to convict him of a Class B or C offense. He requested the court to instruct the jury that, if it found Kotredes guilty of the lesser-included Class D or E theft, it had to determine if another jury rationally could have convicted him of theft in excess of $2000. The court rejected the proposed instruction and agreed with the State that the issue was for the court to decide. Kotredes also asserts that the evidence was not sufficient to convict him of Class B or C theft.

[¶ 14] Kotredes was charged with Class B theft, but he was convicted of the lesser-included offense of Class D theft. The parties agreed that for the dates alleged in the indictment, May 1, 1995, through July 1, 1997, the theft classifications were as follows: theft of $10,000 or more was a Class B offense; theft of more than $2000 but not more than $10,000 was a Class C offense; theft of more than $1000 but not more than $2000 was a Class D offense;

and theft of $1000 or less was a Class E offense. *See* P .L.1995, ch. 224, §§ 3, 4, 5 (effective September 29, 1995).

[¶ 15] The statute of limitations for Class B and C prosecutions is six years, while the limitations period for Class D and E prosecutions is three years. 17–A M.R.S.A. § 8(2) (Supp.2003). In this case, the limitations period ended on December 4, 2000, the date that the indictment was returned. *See id.* § 8(6)(B). Because the offense was alleged to have occurred between May 1, 1995, and July 1, 1997, an indictment charging Kotredes with Class B or C theft was not time-barred, but an information charging him with Class D or E theft would have been beyond the statute of limitations. However, a conviction on a lesser-included offense is not barred, "if as to the crime charged the period of limitation has not expired . . . and there is evidence which would sustain a conviction for the crime charged." 17–A M.R.S.A. § 8(7) (1983).

■■■ [¶ 16] Whether a lesser-included offense is time-barred is an issue that is identical to the one that a court must decide when a motion for judgment of acquittal is presented: has the State submitted sufficient evidence from which a jury acting rationally could find beyond a reasonable doubt that the State has proven each element of the offense. If a court concludes, as the trial court did here, that there was sufficient evidence to prove the felony offense and deny a motion for acquittal, then the court has determined that a conviction for the lesser-included Class D offense is not time-barred. Determining whether evidence is sufficient for purposes of section 8(7) is within the province of the court, not the jury. *See State v. Hicks,* 495 A.2d 765, 771–72 (Me.1985) (citing sec-

tion 8(7) and affirming a conviction for a lesser-included offense for which the statute of limitations had not run because the evidence would have supported a verdict for the charged offense).

[¶ 17] A review of the record demonstrates that the court was correct in concluding that the evidence was sufficient to support a conviction for Class B theft. The credit card statements showed that Kotredes had charged over $16,000 to the town credit card during the time period in the indictment. The court did not err in rejecting Kotredes's proposed jury instruction, refusing to submit the sufficiency of the evidence issue to the jury, and concluding that the statute of limitations did not bar Kotredes's conviction for the lesser-included offense of Class D theft.

## IV. RESTITUTION

■■ [¶ 18] Kotredes was sentenced to 364 days incarceration, suspending all but ninety days. He was sentenced to one year of probation and ordered to pay $15,170 to the Town of Millinocket in restitution. The restitution represents the amount the town paid Adams for conducting the special audit. Kotredes argues that the restitution order is illegal because the cost of Adams's special audit does not come within the definition of "economic loss," and, therefore, is not an authorized basis for restitution.[5]

[¶ 19] Restitution is authorized only for "economic loss," 17–A M.R.S.A. § 1325(1) (Supp.2003), which is defined, inter alia, as including "economic detriment" which consists of "environmental clean-up expense, property loss, allowable expense, work loss, replacement services loss and, if injury causes death, dependent's economic loss

---

**5.** Because Kotredes claims that his sentence is illegal and that the alleged illegality is apparent on the face of the sentence, we review it on direct appeal. *State v. Ricker,* 2001 ME 76, ¶ 18, 770 A.2d 1021, 1026–27.

and dependent's replacement service loss." *Id.* § 1322(3). Each of the listed items, in turn, is further defined. *Id.* § 1322(3)(A)—(F).

[¶ 20] The cost of an audit does not fit within the "economic detriment" items of environmental clean-up expense, work loss, replacement services loss, and losses when death has occurred. The only items of "economic detriment" that could arguably include the cost of an audit are "allowable expense" and "property loss." *See id.* § 1322(3)(A), (D).

[¶ 21] "Allowable expense" is defined to mean "reasonable charges incurred for reasonably needed products, services and accommodations." *Id.* § 1322(3)(A). The statute further defines "reasonable charges" to include "those for medical care, rehabilitation, rehabilitative occupational training, counseling services and other remedial treatment and care and nonmedical remedial care and treatment." From this definition of "allowable expense," we conclude that the Legislature intended that restitution be authorized for victims with physical and mental injuries to assist them in the treatment of their injuries. In contrast, the cost of an audit to a municipality is not the same type of expense as the medical and nonmedical care and treatment in the definition of "allowable expense."

[¶ 22] The other type of "economic detriment" that could arguably include the audit cost is "property loss." However, the definition of "property loss" also shows that the Legislature did not intend to cover ancillary costs such as an audit. "Property loss" is defined as "the value of property taken from the victim, or of property destroyed or otherwise broken or

harmed." *Id.* § 1322(3)(D).[6] This definition does not cover the cost of the audit.

[¶ 23] The State argues that the audit was a charge incurred by the town for a reasonably needed service. Indeed, it seems prudent and reasonable for a town to hire the services of an auditor when financial irregularities with an employee come to light. If the Legislature had not gone to such lengths to define "economic detriment" and to describe "allowable cost," we might agree that the cost of an audit in this type of theft case is appropriate for restitution. However, in our view the Legislature did not include costs for supplemental services such as an audit in the restitution statute in contrast to direct treatment costs incurred by an injured victim or costs that represent the value of stolen or damaged property. A court is not free to impose restitution that is not plainly allowed by the restitution statute. *See State v. McCray,* 1999 ME 151, ¶¶ 4–6, 740 A.2d 38, 39–40. Because the cost of the audit incurred by the town is not included within the definition of "economic loss," the portion of the sentence ordering restitution to the town for the cost is illegal.

The entry is:

Judgment of conviction affirmed. Sentence vacated. Case remanded to the Superior Court for resentencing.

---

6. The definition also includes the value of taxes and specifics related to drug offenses, neither of which are relevant here. 17–A M.R.S.A. § 1322(3)(D) (Supp.2003).