2004 ME 149

STATE of Maine

v.

Frank C. GREENLEAF.

Supreme Judicial Court of Maine.

Argued: Sept. 23, 2004.

Decided: Dec. 13, 2004.

G. Steven Rowe, Attorney General, William Baghdoyan, Asst. Atty. Gen. (orally), Augusta, for State.

Kevin W. Cuddy (orally), Bangor, for defendant.

Jonathan A. Block, Pierce Atwood, L.L.P., Portland, for amicus curiae Maine Maritime Alumni Ass'n.

Panel: CLIFFORD, RUDMAN, ALEXANDER, CALKINS, and LEVY, JJ.

ALEXANDER, J.

[¶ 1] Frank C. Greenleaf appeals from the judgment of the Superior Court (Penobscot County, *Warren, J.*) convicting him, after a jury-waived trial of one count of income tax evasion (Class C), pursuant to 36 M.R.S.A. § 5330 (1990); one count of income tax evasion (Class C), pursuant to 36 M.R.S.A. § 184–A (Supp. 1997); and two counts of failure to make a return (Class D), pursuant to 36 M.R.S.A. § 5332 (1990).[1] Greenleaf asserts that the State did not demonstrate that he possessed the requisite criminal intent. He also contends that the trial court did not sufficiently respond to his request for findings of fact, and that the statutes under which he was prosecuted are void for vagueness. We affirm the judgment of conviction.

## I. CASE HISTORY

[¶ 2] Frank Greenleaf was born and raised in Old Town. He married in 1970, and in 1974, bought a home in Milford. There he and his wife raised two children and operated a tool rental business until they divorced in 1986. Greenleaf was a member of the Merchant Marine, and spent the majority of his time at sea.

[¶ 3] Soon after his divorce, Greenleaf decided that he no longer wished to be considered a Maine resident for tax purposes. He spoke with a certified public accountant, who advised him that he would have to break all legal ties with the State of Maine. The accountant advised Greenleaf that he could not spend more than 183 days per year in Maine, and that he had to give up his Maine voter registration, register to vote in another state, get a driver's license in another state, and establish a residence in another state.

[¶ 4] After this conversation, Greenleaf claimed an address in Goffstown, New Hampshire, as his residence. He used that address to obtain a New Hampshire driver's license, register his motorcycle, open a bank account, and register to vote in New Hampshire. He also cancelled his Maine voter registration, and after 1986, he did not spend more than 183 days per year in Maine.

[¶ 5] From 1988 to 1997, Greenleaf claimed an address in Rochester, New Hampshire as his residence. He used this address to renew his New Hampshire driver's license, his motorcycle registration, and to vote via absentee ballot. He stayed at the Rochester and Goffstown addresses, both of which were owned by friends of his, only a few nights over a period of ten years. When he received mail at either address, his friends forwarded it to him.

[¶ 6] In 1992, Greenleaf became engaged. His fiancé purchased Greenleaf's ex-wife's interest in the family house in Milford, and moved into the house. Greenleaf retained the other half-interest. Later that year, the property was reconveyed to Greenleaf and his fiancé as joint tenants. In 1994, it was reconveyed solely to his fiancé. The deeds list Greenleaf as a resident of Old Town and Milford, respectively.

---

1. Title 36 M.R.S.A. § 5330 has since been repealed by P.L. 1997, ch. 504, § 19 (effective June 12, 1997). Title 36 M.R.S.A. § 184–A has since been amended by P.L. 2003, ch. 452, § U–2 (effective July 1, 2004), *codified at* 36 M.R.S.A. § 184–A (Supp. 2004). Title 36 M.R.S.A. § 5332 has since been repealed and replaced by P.L. 2003, ch. 452, § U–17 (effective July 1, 2004), *codified at* 36 M.R.S.A. § 5332 (Supp. 2004).

[¶ 7] Greenleaf remarried in 1995. He continued to spend most of his time at sea, until he retired in 2000. His wife resided full time in the Milford house and worked in Bangor. During the years at issue, Greenleaf rented or owned a camp in Maine, continued to operate his tool rental business with two locations in Maine, and owned a timeshare and another parcel of real estate in Maine. He spent the majority of his time on breaks from sea duty in Maine at his home in Milford or at his camp, and he spent many days working in his rental business.

[¶ 8] In 1997, Greenleaf's wife retired from her job in Bangor. She and Greenleaf then began renting an apartment in Florida. They kept their home in Maine. They moved back to Maine in 2002, and reside in Milford.

[¶ 9] Between 1986 and 2002, Greenleaf did not file tax returns or pay income taxes in Maine. He was charged with evading income tax and failing to make and file Maine income tax returns for the years 1996 to 1999. Greenleaf waived his right to a trial by jury. M.R.Crim. P. 23(a). After trial, the court stated its findings on the record and found Greenleaf guilty of two counts of evasion of Maine income tax, and two counts of failure to make and file Maine income tax returns, covering the years 1996 and 1997. The trial court found him not guilty of the charges covering the years 1998 and 1999.

[¶ 10] Greenleaf filed a motion for additional findings of fact pursuant to M.R.Crim. P. 23(c). The trial court stated its additional findings on the record at the sentencing hearing. Thereafter, the court sentenced Greenleaf to eighteen months incarceration, all but ninety days suspended, and two years probation. Greenleaf was also ordered to pay $26,891 in restitution, and fines totaling $2000. Greenleaf filed this appeal.

[¶ 11] Greenleaf contends that the record contains insufficient evidence of intent to evade or intent to fail to make the returns. He also contends that in response to his motion for findings of fact, the trial court did not state findings that establish intent to evade or intent to fail to file. Finally, he argues that the statutes under which he was convicted are impermissibly vague in violation of the United States and Maine Constitutions.

## II. STANDARD OF REVIEW

[¶ 12] Upon a claim of insufficient evidence, we view the evidence in the light most favorable to the State to determine whether the fact-finder "could rationally find every element of the offense beyond a reasonable doubt." *State v. Kotredes*, 2003 ME 142, ¶ 9, 838 A.2d 331, 335.

[¶ 13] We review trial court decisions on issues of law de novo, *State v. Trott*, 2004 ME 15, ¶ 7, 841 A.2d 789, 791, and any factual findings for clear error, *State v. Bartlett*, 661 A.2d 1107, 1108 (Me. 1995). Factual findings are clearly erroneous only when there is no competent evidence in the record to support them. *State v. Seamen's Club*, 1997 ME 70, ¶ 7, 691 A.2d 1248, 1251.

## III. LEGAL ANALYSIS

### A. The Elements of the Crimes

[¶ 14] Greenleaf was convicted of one count of evading taxes in 1996, pursuant to 36 M.R.S.A. § 5330, which provides: "Any person who intentionally attempts in any manner to evade or defeat any tax imposed by this Part or the payment thereof, in addition to any other penalties provided by law, is guilty of a Class C crime ...." 36 M.R.S.A. § 5330 (1990). He was also convicted of one count of evading taxes in 1997, pursuant to an

amended version of that statute.[2] The key element of each of these crimes, for purposes of our analysis, is the intentional attempt to evade or defeat any tax.

[¶ 15] Greenleaf was further convicted of two counts of failure to make returns pursuant to 36 M.R.S.A. § 5332, which provides that "[a]ny person required under this Part to pay any tax ... or required by this Part or regulation prescribed thereunder to make a return ... who intentionally fails to pay that tax or ... make the return ... is guilty of a Class D crime ...." 36 M.R.S.A. § 5332 (1990).

[¶ 16] A tax is "imposed" pursuant to these statutes, on the "Maine taxable income of every resident individual of this State." 36 M.R.S.A. § 5111 (1990). "Resident individual" is defined as:

[A]n individual

A. Who is domiciled in Maine;

B. Who is not domiciled in Maine, but maintains a permanent place of abode in this State and spends in the aggregate more than 183 days of the taxable year in this State, unless he is in the Armed Forces of the United States.

36 M.R.S.A. § 5102(5) (1990).

[¶ 17] An income tax return must be filed by "[e]very resident individual ... who is required to file a federal income tax return," or who "has a Maine individual income tax liability for the taxable year." 36 M.R.S.A. § 5220(1) (1990).

[¶ 18] Greenleaf concedes that he was domiciled in Maine in the relevant tax years and that he did not file tax income returns or pay income taxes. He only challenges proof of the element of intent to violate the law.

**B. Intent to Evade or Intent to Fail to File a Return**

[¶ 19] Greenleaf argues that although the State may have proved that he acted intentionally to avoid paying taxes, it did not carry its burden to prove that he acted with the intent to violate the tax laws. He asserts that there is a difference between the legal activity of intentionally *avoiding* taxes, and the illegal activity of intentionally *evading* taxes. While it is not criminal conduct to work within the tax code in an attempt to reduce the amount of taxes one is required to pay, *Gregory v. Helvering*, 293 U.S. 465, 469, 55 S.Ct. 266, 79 L.Ed. 596 (1935), it is criminal conduct to intentionally evade a known legal duty to pay taxes, *see Cheek v. United States*, 498 U.S. 192, 201, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991).

[¶ 20] In *Cheek*, the United States Supreme Court interpreted federal statutes similar to the statutes under which Greenleaf was convicted, except that the federal statutes required proof of the mental state "willful" rather than "intentional." *Id., see* 26 U.S.C.A. §§ 7201, 7203 (2002). The Court reviewed its precedents and interpreted the statutory willfulness requirement to mean the "voluntary, intentional violation of a known legal duty." *Cheek*, 498 U.S. at 201, 111 S.Ct. 604. The Court held that to establish willfulness, the government had the burden to (1) prove that the defendant was aware that the law imposed a duty on him and that he voluntarily and intentionally violated that duty; and (2) negate "a defendant's claim of ignorance of the law or a claim that because of a misunderstanding of the law, he had a good-faith belief that he was not violating any of the provisions of the tax laws...."

---

**2.** Title 36 M.R.S.A. § 184–A(2) provides that "Any person who intentionally attempts in any manner to evade or defeat any tax in an amount over $2,000 imposed by this Title or the payment of the assessed tax, in addition to any other penalties provided by law, is guilty of a Class C crime." 36 M.R.S.A. § 184–A(2) (Supp. 1997).

whether or not the claimed belief or misunderstanding is objectively reasonable." *Id.* at 201–02, 111 S.Ct. 604.

[¶ 21] We addressed the intent element of our criminal tax laws in two cases that preceded *Cheek.* In *State v. Lane,* 495 A.2d 773 (Me.1985), the defendant had been convicted of intentionally failing to account for and pay over withheld income taxes. *Id.* at 773–74. We held that it was not necessary to consult federal precedent to determine the meaning of "intentionally." *Id.* at 774. Instead, we looked to 17–A M.R.S.A. § 35 (1983), which defines the various culpable states of mind. That provision states that "[a] person acts intentionally with respect to a result of his conduct when it is his conscious object to cause such a result ...." 17–A M.R.S.A. § 35(1)(A). Lane's conviction was vacated for lack of proof of other elements of the offense. *Lane,* 495 A.2d at 776–77.

[¶ 22] In *State v. Weller,* 576 A.2d 742 (Me.1990), the defendant was convicted of intentionally failing to file an income tax return. *Id.* at 742. The defendant argued that he had researched the law, and believed that under his circumstances he was not required to file a tax return. *Id.* at 743. We stated that the defendant's "personal misapprehension of the law affords him no excuse for failing to file an income tax return, a commonly recognized obligation of everyday life." *Id.* The Court did not review Weller's claim of insufficient evidence, because he had failed to provide a transcript of the trial court proceedings. *Id.* As *Weller* shows, we require that in order to negate intent, a defendant's claimed belief or misunderstanding must be objectively reasonable. A taxpayer may not rely on a frivolous view of the law, or a disagreement with the law as a defense. *Id.*

[¶ 23] Thus, to prove the intent element of the criminal tax statutes the State must (1) demonstrate that Greenleaf consciously chose to violate a known legal duty to pay taxes and file returns; and (2) negate Greenleaf's claim that because of a misunderstanding of the law, he had an objectively reasonable, good-faith belief that he was not violating a known legal duty.

[¶ 24] The evidence shows that in 1986, Greenleaf sought advice from an accountant who told him that, in order to avoid paying Maine taxes, he had to break his legal ties with Maine, spend fewer than 183 days per year in Maine, establish a residence elsewhere, register to vote, and register his vehicles in a different state. Greenleaf testified that he attempted to follow this advice and thus did not pay Maine taxes or file tax returns under a good faith belief that he was acting in accordance with the law.

[¶ 25] The trial court, however, did not believe Greenleaf's testimony. The court found that Greenleaf had not established a residence in New Hampshire, as advised by his accountant, but only established a "mail drop." The trial court further found that Greenleaf's asserted good faith belief had been negated by other evidence. The court stated:

His wife is living in the original family home that he owned before his divorce, he is spending the bulk of the time, when he is not aboard ship, in Maine, he has a camp in Maine, and his contacts with New Hampshire were basically as a mail drop and a place where he paid minimal amounts of rent and registered to vote and took out a driver's license but only spent a couple of nights over a four or five-year period, that was a level of artifice that I think could not possibly constitute a valid domicile.

And, in addition, considering the testimony of [the accountant] and Mr. Greenleaf, I find that the State proved beyond a reasonable doubt that there

was an intention, which is to say a conscious object, to evade—to evade a known duty with respect to those two years.

[¶ 26] A fact-finder rationally could have found that a reasonable taxpayer would not believe that he had lawfully severed his tax connection to Maine merely by using a friend's address to receive mail and obtain official documents, while at the same time residing with his wife at the family home or vacation property in Maine, and running his Maine-based business while not at sea. The facts of record support the trial court's findings, beyond a reasonable doubt, that Greenleaf knew he had a duty to pay taxes and to file tax returns in Maine, and that it was his conscious object to evade that duty by creating the "artifice" of a residence, which the court found was nothing more than a "mail-drop," in another state.

[¶ 27] We further determine that under the facts of this case, Greenleaf was not entitled to assert reliance on professional advice as a defense. Reliance on the advice of professionals such as accountants or attorneys on tax matters is objectively reasonable and a valid defense in tax evasion prosecutions only if the taxpayer provides the professional with all the relevant facts and follows the advice that is given. E.g., *United States v. Bishop*, 291 F.3d 1100, 1107 (9th Cir.2002). The evidence shows that Greenleaf merely asked an accountant for prospective advice on how he should structure his life in order lawfully to avoid Maine taxes. He never returned and told the accountant the actual facts of his situation, that he was using an address in New Hampshire to receive mail and to register to vote and to register his vehicles, but that he did not actually live at the address nor did he ever intend to live there. Nor did he inform the accountant that he planned to spend most of his time when not at sea at the family home or camp in Maine, to identify Maine as his place of residence on real estate documents, and to operate his business in Maine during his leave-time.

## C. Adequacy of Factual Findings

[¶ 28] Greenleaf argues that in response to his request for additional findings of fact pursuant to M.R.Crim. P. 23(c),[3] the trial court did not state facts sufficient to establish all of the elements of the offenses with which he was charged.

[¶ 29] "Rule 23(c) does not require a court to specify all the evidence it relied on in making its findings of ultimate fact. To the contrary, a court need only find as fact each of the elements of the offense, in order to satisfy the requirements of Rule 23(c)." *State v. Michaud*, 1998 ME 251, ¶ 22, 724 A.2d 1222, 1231 (citations omitted). "The purpose of that rule is to enable the requesting party, and the appellate court on review, to ascertain the factual and legal bases for the court's decision." *State v. Levi*, 384 A.2d 40, 42 (Me.1978). If the findings demonstrate that the court applied a correct understanding of the controlling law, and they address each of the elements of the offense, the findings are sufficient. *Id.*

[¶ 30] The trial court stated its original findings from the bench at the time it pronounced its verdict. It responded to Greenleaf's Rule 23(c) motion by stating

---

3.  M.R.Crim. P. 23(c) provides as follows:

    (c) Trial Without a Jury in the Superior Court. In a case tried in the Superior Court without a jury the court shall make a general finding and shall in addition on request find the facts specially. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact appear therein.

additional findings on the record at the sentencing hearing. Responding to the motion for additional findings, the trial court addressed "the issue of intent to evade." The court stated:

> I think you were talking about the issue of intent to evade, which is the same as the intent to fail to file.... [I]t seems to me that was an issue primarily for circumstantial evidence but not entirely based on the testimony of [an accountant] ... and on the testimony of Mr. Greenleaf, weighing their credibility, part of what they said and part of what they did not say, when weighed against the—the fact that the New Hampshire address was purely and simply a mail drop with no other substance than—than that and that that was the—the basis of the finding that there was an intent to evade as well as an intent to ... fail to file, which I believe are the same in this instance.... And so I think that covers it with respect to '96.
>
> ....
>
> In terms of 1997, even though there was some indicia of—of creation of—a residence or partial residence in Florida in late 1997 ... I was still convinced beyond a reasonable doubt that in 1997 ... the State had proven that Mr. Greenleaf was still intending to evade Maine taxes and that it wasn't until later that I began to develop the doubt with respect to at what point Mr. Greenleaf's actual intent had changed.... [L]et me just say one piece of evidence that I recall ... I noted that on his 1997 federal return, he was still claiming New Hampshire ... as his address.... [A]nd in my view, the State had proven beyond a reasonable doubt that New Hampshire was not his domicile and beyond a reasonable doubt that, in claiming New Hampshire to be his domicile, he was intending to evade Maine taxes.

[¶ 31] Greenleaf interprets these findings as addressing only the issue of intent to establish domicile. However, the facts regarding use of the New Hampshire address and the court's characterization of the New Hampshire address as a mere "mail-drop," as well as the reference in the original findings to the use of the address as an "artifice," establish the element of intent to evade; that is, that it was Greenleaf's conscious object to evade his known legal duty to pay taxes and make tax returns. There is competent evidence in the record that supports these findings. The findings address each element of the offense, and demonstrate that the court applied a correct understanding of the controlling law. They are sufficient.

D. Vagueness

[¶ 32] A criminal statute is unconstitutionally vague if it fails to define the charged offense (1) with sufficient definiteness that ordinary people can understand what conduct is prohibited, and (2) in a manner that does not encourage arbitrary and discriminatory enforcement. *State v. McLaughlin*, 2002 ME 55, ¶ 9, 794 A.2d 69, 72.

[¶ 33] Greenleaf contends that the tax code is impermissibly vague based on the following: (1) 36 M.R.S.A. § 5330 mandates that a person who is required to pay a tax must file an income tax return, but does not explain who is required to pay tax, nor does it refer the reader to a place to find this information; (2) the term "resident individual" is used in 36 M.R.S.A. § 5220 but is defined in 36 M.R.S.A. § 5102; and (3) the term "domicile," found in section 5102, is not defined anywhere in the tax code. Greenleaf argues that these statutes are so vague that ordinary people cannot understand what conduct is prohibited. Amicus curiae the Maine Maritime Academy Alumni Association argues that

the term "domicile" is particularly difficult to apply to persons whose profession requires a great deal of travel, especially merchant seamen who return to a particular state only when not aboard a ship.

[¶ 34] Because the unconstitutionality of the statutes was not raised during the trial proceedings, we review the issue only for obvious error affecting substantial rights. *State v. Crocker*, 435 A.2d 58, 62 (Me.1981). The trial court in this case did not err when it did not, sua sponte, declare the statutes unconstitutional. All of the relevant terms are adequately defined within the tax code, except for the term domicile. Greenleaf concedes that the State has established domicile, thus that issue is not presented on appeal.

The entry is:

Judgment affirmed.